**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                      **v.**           **09-CR-267A(Sr)**

**IAN FINDLEY,**

        **Defendant.**

_____

**DECISION AND ORDER**

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #13.

**PRELIMINARY STATEMENT**

The defendant, Ian Findley, is charged with Jaleesa Findley in a two-count Indictment with having violated Title 21, United States Code, Section 846 (Counts 1 and 2) and Title 18, United States Code, Section 2 (Count 2). Dkt. #1. Specifically, Count 1 of the Indictment charges that between in or about 2007 and on or about June 3, 2009, the defendants conspired to possess with the intent to distribute 100 kilograms or more of a mixture and substance containing marijuana. *Id*. Count 2 charges that on or about June 3, 2009, the defendants attempted to possess with the intent to distribute 50 kilograms or more of a mixture and substance containing marijuana. *Id*.

Presently pending before this Court is the defendant's second motion for discovery and a motion for severance. Dkt. #42. The government has filed its response to the pending motions. Dkt. #43. Oral argument on defendant's motion to sever was held on September 30, 2010.

## DISCUSSION AND ANALYSIS

**Discovery and Inspection**

The defendant readily admits that the government has provided voluntary discovery. Pursuant to Federal Rules of Criminal Procedure Rule 16(a)(1)(A)(B)(D)(E)(F) and (G), the defendant now moves to compel the disclosure "of any items or information to which the defendant is entitled, but was not previously provided and further that which was subject to the prior Decision and Order on the prior Discovery Omnibus Motion." Dkt. #42, pp.2-3. Specifically, the defendant seeks disclosure of:

> a.  A copy of Defendant's Alien file ("A-file").
>
> b.  A copy of the air surveillance video referred to as "ex N-2 in the June 4, 2009 DEA Report of Investigation."
>
> c.  "The search warrant application and the Affidavits for the search warrant applied for in the Town of Cheektowaga Justice Court. In the Criminal Complaint after K-9s reacted positively to the presence of drugs on four parcels, DEA Task Force Agent Kevin Schmidt applied for and received the search warrant signed by Cheektowaga Town Justice Thomas S. Kolbert."

>    d.   Applications, affidavits and search warrants for 468 Dartmouth Avenue and 242 LeRoy Avenue, Buffalo, NY.

Dkt. #42, p.3.

> In its response, the government states,
>
> [d]iscovery has been ongoing and voluntary. Pursuant to Rule 12(b)(4), the government intends to use all items that the defendant has been provided with or been made aware of as part of the government's case n chief. **Additional discovery will be disclosed to the defense as it is provided to the government.** The government contends that it provided, pursuant to voluntary discovery[,] material presently within its possession that is within the purview of Rule 16 and in compliance with Rule 12(b)(4)(B). Defendant Ian Findley has requested additional items at Paragraph 6 of his motion. The government has requested those items from either the U.S. Drug Enforcement Administration ("DEA") or Immigration and Customs Enforcement ("ICE") and when the government has received them they will be disclosed accordingly.

Dkt. #43, p.2.

**Alien File**

As in its response to the defendant's first motion for discovery, the government does not specifically respond to the defendant's request for the disclosure of his Alien file. Absent a specific response, the Court interprets the government's silence in response to this request to mean that, "[t]he government declines to provide other materials requested, unless specifically agreed to, in the motions as outside the purview of Rule 16." Dkt. #43, p.3. However, it appears from the government's response quoted above, that the government *may* have requested the defendant's

-3-

Alien File from ICE. Based on the prior proceedings held before this Court in connection with the Criminal Complaint filed against the defendant and thereafter, the Indictment returned by a Federal Grand Jury, the Court is aware that the defendant is a citizen of Jamaica and the defendant was in the United States on a "visitors visa." The Court is mindful of the recent United States Supreme Court decision in *Padilla v. Kentucky* decided on March 31, 2010, which held, *inter alia*, that counsel for a criminal defendant must inform his client whether his plea carries a risk of deportation. In *Padilla*, the petitioner, Jose Padilla, a native of Honduras, had been a lawful permanent resident of the United States for over forty years. Following a plea of guilty to the transportation of a large amount of marijuana, Padilla faced deportation. In a post-conviction proceeding, Padilla claimed that his counsel not only failed to inform him of the possible immigration consequences of his plea of guilty, but further that Padilla "did not have to worry about immigration status since he had been in the country so long." *Padilla v. United States*, __ S.Ct. __, 2010 WL 1222274, *3 (Mar. 31, 2010), *citing*, *Commonwealth of Kentucky v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008). In reversing the judgment of the Supreme Court of Kentucky, the United States Supreme Court agreed with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation. Thus, it is incumbent upon counsel for the defendant to inform him of any possible immigration consequences a criminal conviction may have.

Based in part on the government's failure to respond to this specific request and in reliance upon the United States Supreme Court's admonition to criminal

defense counsel concerning informing criminal defendants of potential immigration consequences as explained in *Padilla*, the defendant's request for a copy of his Alien file is once again granted. *See* Dkt. #27.

### Air Surveillance Video

Once again, the government does not specifically address the defendant's request for a copy of the air surveillance video referred to as "ex. N-2 in the June 4, 2009 DEA Report of Investigation" in its response. The Court again interprets the government's silence in response to this request to mean that, "[t]he government declines to provide other materials requested, unless specifically agreed to, in the motions as outside the purview of Rule 16." Dkt. #43, p.3. The Court does note that as part of its general, overall response to all of the defendant's requests for discovery, the government states, "[t]he government has made available all tangible objects obtained pursuant to search warrants or otherwise and will make available photographs material to the preparation of a defense or intended to be used as evidence-in-chief at trial or obtained from or belonging to the defendant." Dkt. #43, pp.3-4. In the absence of a specific objection from the government, the defendant's request is granted and the government is hereby directed to either provide a copy of the air surveillance video (described above) to counsel for the defendant or make a copy available to defense counsel for his review.

**Search Warrant Applications, Affidavits**

The government does not specifically respond to the defendant's requests for the search warrant applications and affidavits described above. The Court again interprets the government's silence in response to this request to mean that, "[t]he government declines to provide other materials requested, unless specifically agreed to, in the motions as outside the purview of Rule 16." Dkt. #43, p.3. It appears to this Court that the search warrant application and affidavits for the search warrant applied for in the Town of Cheektowaga Justice Court as described in the Criminal Complaint, sought evidence which now forms the basis, at least in part, for the instant charges. The defendant is entitled to the disclosure of the search warrant application and affidavits presented to Cheektowaga Town Justice Thomas S. Kolbert. Therefore, that portion of the defendant's request is granted.

With respect to the defendant's request for applications, affidavits and search warrants for 468 Dartmouth Avenue and 242 LeRoy Avenue, Buffalo, NY, it is this Court's understanding that 468 Dartmouth Avenue, Buffalo, NY is the defendant's brother, LeRoy Findley's residence. Based on the discussion held before the Court during oral argument, the defendant concedes that he does not have standing to challenge the search warrant executed at his brother's residence located at 468 Dartmouth Avenue, notwithstanding the fact that the government may seek to use evidence obtained from that search against one or both of the defendants during a trial. Absent standing to challenge the search warrant for 468 Dartmouth Avenue, and without additional information from the defendant as to the basis for the request for the

disclosure of the application and affidavits, the defendant's request is denied without prejudice. It is not clear to this Court from the record who resides at 242 LeRoy Avenue or on what basis the defendant is seeking to have the search warrant application and affidavit for 242 LeRoy Avenue disclosed. Absent additional information setting forth the basis for seeking the disclosure of the search warrant application and affidavit for 242 LeRoy Avenue, the defendant's request is denied without prejudice.

**Severance**

In his severance motion, the defendant argues that by reason of a June 18, 2010 disclosure by the government indicating that "there was a prior seizure and evidence that [the government] was going to put in the case in chief in this matter.[sic]"[1] Dkt. #42, ¶ 9. More specifically, the defendant states that,

> 10. [i]t involved an investigation and a search warrant for 468 Dartmouth Avenue, Buffalo, NY and 242 LeRoy Avenue, Buffalo, NY.
>
> 11. In examining the materials that were transmitted to me, I note that on November 8. [sic] 2007 the Hon. H. Kenneth Schroeder, issued a search warrant authorizing the search of LeRoy Findley's residence at 468 Dartmouth, Buffalo. [sic] NY [sic]
>
> 12. Ian Findley is not LeRoy Findley and this evidence is severely prejudicial. I believe that it was tendered to us and is intended to be used with regard to a black female Jaleesa Garrett, DOB 9/19/87. See page 2 of the Report No. 12 of the DEA annexed hereto as an exhibit.

---

[1] The defendant claimed that a copy of the June 18, 2010 disclosure was attached to his motion (Dkt. #42), however, the document was not attached. At the Court's request, counsel for the defendant re-filed his Affirmation, together with the attachment, on October 27, 2010. Dkt. #44.

13. Findley went into 242 LeRoy and was accompanied by Jaleesa Garrett. Report No. 13 shows at 3:50 p.m. the ICE Agent executed a search warrant for 242 LeRoy Avenue and seized 55 lbs of marijuana. LeRoy Findley was charged under a Federal Complaint.

14. It is my understanding that LeRoy Findley has entered a plea and that case is no longer pending in the Western District of New York. I have received no information as to why this was sent to me or is going to be attempted to be used in the case in chief other than that Jaleesa Garrett is involved in that marijuana incident with LeRoy Findley and in the current indictment for conduct by Scott Thaler.

15. It appears that if the aforesaid seizures are attempted to be used in a case in chief of Jaleesa Garrett Findley, that the spill over evidence is so great, since the incident involved LeRoy Findley, that there are no safeguards that would be present to avoid the prejudicial spill over into the case of Ian Findley.

16. Ian Findley has always maintained that he knows nothing about this incident or the first incident and that Jaleesa Garrett and Scott Thaler, may have been conducting a business and maybe she was conducting one with LeRoy Findley.

17. The problem with this defense is that the prejudicial spill over is so great that a jury could not help but circumstantially attribute conduct of LeRoy Findley to Ian Findley. Moreover, Ian Findley was in the United States from March 2007 until September 2007 when he left for Jamaica. He did not return until March 2008. Any attempt to attribute that prior marijuana to Ian Findley because of the involvement of Jaleesa Garrett is severely prejudicial, and, because of the confusion of the Findley/Garrett/Findley triumvirate, it would cause undo prejudice to Ian Findley in defense of his case.

Dkt. #42, ¶¶ 10-17.

[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14

> only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Zafiro v. United States*, 506 U.S. 534, 539 (1993). When the charges against the defendants involve a common plan or scheme, the defendants who have been indicted together will normally be tried together. *United States v. Matos-Peralta*, 691 F. Supp. 780, 789 (S.D.N.Y 1988), *aff'd sub nom. United States v. Benitez*, 920 F.2d 1080 (2d Cir. 1990). "The disposition of a motion for severance under Rule 14 is entrusted to the sound discretion of the trial court. *See United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir. 1987)." *United States v. Matos-Peralta* at 788; *Opper v. United States*, 348 U.S. 84 (1954).

The defendant maintains a "heavy burden" in establishing a right to a severance. *United States v. Sotomayor*, 592 F.2d 1219, 1227 (2d Cir.), *cert. denied*, 442 U.S. 919 (1979). He must establish that he will be so severely prejudiced by a joint trial that he will in effect be denied a fair trial. *United States v. Persico*, 621 F. Supp. 842 (S.D.N.Y. 1985).

> The ultimate question is whether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

*United States v. Kahaner*, 203 F. Supp. 78, 81-83 (S.D.N.Y. 1962); *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836 (1963).

The defendant has failed to make a threshold showing that there is a real likelihood that the jury would be so confused so as to attribute the conduct of an alleged uncharged co-conspirator, LeRoy Findley, to the defendant herein, simply because of the involvement of co-defendant Jaleesa Garrett Findley. As a result of such failure, the defendant's motion for a severance is denied. *See United States v. Nason*, 9 F.3d 155, 158-59 (1st Cir. 1993); *United States v. Miranda*, 248 F.3d 434, 440 (5th Cir. 2001); *United States v. Elder*, 90 F.3d 1110, 1120 (6th Cir. 1996); *United States v. Smith*, 223 F.3d 554, 574 (7th Cir. 2001).

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    Buffalo, New York
               October 28, 2010

                                          *s/ H. Kenneth Schroeder, Jr.*
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**